UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

WAYNE CHRISTIAN BAILEY,

      Plaintiff,

v.                                   Case No: 6:15-cv-1415-Orl-TBS

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## ORDER[1]

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Disability Insurance Benefits ("DIB") under the Act. Upon review of the record and after due consideration, the Commissioner's final decision in this case is **AFFIRMED.**

## I. Background[2]

Plaintiff was forty-three years old on the date of the ALJ's decision (Tr. 156), with four years of college and job training in the military, where he worked as a space operations analyst (Tr. 70, 184-185). He filed for DIB on September 5, 2013, alleging disability commencing on March 21, 2013 (Tr. 78, 156-162). His claim was denied initially on December 19, 2013, and upon reconsideration on March 18, 2014 (Tr. 106-108, 113-117). Plaintiff requested a hearing which was held on November 7, 2014, before

---

[1] Both parties have consented to the exercise of jurisdiction by a magistrate judge and the matter has been referred in accordance with 28 U.S.C. §636(c) and Fed .R. Civ. P. 73 (Docs. 10, 13).

[2] The information in this section is taken from the parties' joint memorandum (Doc. 17).

Administrative Law Judge ("ALJ") Maria Teresa Mandry (Tr. 35-77, 119). On January 22, 2015, the ALJ issued an unfavorable decision (Tr. 11-32). On June 24, 2015, the Appeals Council denied Plaintiff's request for review (Tr.1-6). Accordingly, the ALJ's decision finding that Plaintiff was not disabled was the final decision of the Commissioner. Having exhausted the available administrative remedies, Plaintiff timely filed this action for judicial review (Doc. 1).

## II. The ALJ's Decision

When determining whether an individual is disabled, the ALJ must follow the five-step sequential evaluation process established by the Social Security Administration and set forth in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). Specifically, the ALJ must determine whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. See Phillips v. Barnhart, 357 F.3d 1232, 1237-1240 (11th Cir. 2004). The plaintiff bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987); Phillips, 357 F.3d at 1241 n.10.

Here, the ALJ performed the required five-step sequential analysis (Tr. 16-26). At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 21, 2013, his alleged disability onset date (Tr. 16). At step two, the ALJ determined that Plaintiff has the following severe impairments: anxiety disorder and dysfunction of the right shoulder (20 CFR 404.1520(c)). Id. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that medically meets or equals the

severity of any of the impairments listed in 20 CFR Part 404, Subpat1 P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). Id. Before proceeding to step four, the ALJ decided that Plaintiff has the residual functional capacity to perform:

> less than the full range of light work as defined in 20 CFR 404.1567(b). The claimant can carry, lift, push and pull up to 20 pounds occasionally and 10 frequently; can sit, stand or walk for 6 hours each in an 8-hour workday; and has no postural limitations. He is able to reach overhead frequently with his right upper extremity but has no limitations with the left upper extremity, and is not limited in handling and fingering bilaterally. From the mental standpoint, he can understand, retain and carry out simple instructions and consistently and usefully perform routine tasks on a sustained basis with minimal supervision. He is able to adapt overtime [sic] to most changes and tasks demands, make simple decisions and take appropriate precautions from normal hazards. He cannot work with the public, but is able to work occasionally with coworkers and supervisors.

(Tr. 18). At step four, the ALJ found that Plaintiff is not capable of performing his past relevant work (R. 25). At the last step, the ALJ concluded that, based on the testimony of a vocational expert and considering Plaintiff's age, education, work experience and residual functional capacity, he is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and therefore he is not disabled (Tr. 26).

### III. Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla but less than a preponderance. It is such relevant evidence that a reasonable person would accept as

adequate to support a conclusion." <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).

When the Commissioner's decision is supported by substantial evidence the district court will affirm even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. <u>Miles v. Chater</u>, 84 F.3d 1397, 1400 (11th Cir. 1996). The district court "may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" <u>Id.</u> "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." <u>Foote</u>, 67 F.3d 1533, 1560 (11th Cir. 1995) (per curiam); <u>accord</u> <u>Lowery v. Sullivan</u>, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### IV. Discussion

#### 1. <u>The ALJ's treatment of the VA's Decision</u>

Plaintiff served in the United States Air Force from August 7, 1991 through September 27, 2013 (Tr. 669). On December 26, 2013, the Department of Veterans Affairs granted him an eighty percent service connected disability effective December 1, 2013 (Tr. 163). Plaintiff sought reconsideration of that rating and, on August 20, 2014, the VA granted him a 100 percent disability rating (Tr. 669-670). In her administrative decision, the ALJ acknowledged the rating (Tr. 20), but found that "although the Department of Veterans Affairs awarded 100 percent service-connected disability rating, concerning Social Security Administration regulations the claimant's conditions do not meet or equal any listing and would not be disabling" (Tr. 22). Plaintiff contends that the ALJ failed to apply the correct legal standards to the VA disability rating in that VA ratings

are to be accorded great weight and the ALJ "failed to articulate a legitimate basis for not according great weight" to the rating (Doc. 17 at 12).

VA determinations are not binding on the Commissioner. See 20 C.F.R. § 404.1504 ("A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us."). Moreover, a VA determination that a claimant is disabled is not a medical opinion from a treating source or an acceptable source and is not entitled to controlling weight or special consideration on that basis. See 20 C.F.R. §§ 404.1502 (defining treating source); 404.1513(a) (defining acceptable medical sources); see also SSR 06-03p, 2006 WL 2329939 (S.S.A.) ("only 'acceptable medical sources' can give us medical opinions" and "only 'acceptable medical sources' can be considered treating sources … whose medical opinions may be entitled to controlling weight."). Still, while not binding, a disability rating from the VA is evidence that should ordinarily be afforded great weight by the ALJ. See Olson v. Schweiker, 663 F.2d 593, 597 n.4 (5th Cir. 1981).[3] If the ALJ declines to give a VA disability rating great weight, the ALJ "should state the reasons for doing so in order to allow a reasoned review by the courts." Carbonell v. Comm'r Soc. Sec., Case No. 6:11-cv-400-Orl-22DAB, 2012 U.S. Dist. LEXIS 75687, at *13 (M.D. Fla. May 11, 2012); see also Cronin v. Comm'r Soc. Sec., No. 6:10-cv-1765-Orl-DAB, 2012 WL 3984703 at *6 (M.D. Fla. Sept. 11, 1012).

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981. As Olson was decided December 11, 1981, it is not binding. It is cited for its persuasive value.

Here, the ALJ considered the VA's disability determination and discounted it, because Plaintiff's conditions "do not meet or equal any listing and would not be disabling" under the standard used by the Social Security Administration (Tr. 22). Although Plaintiff contends that the ALJ did not apply the correct legal standard, the ALJ accurately stated that Plaintiff's condition is to be evaluated under the regulations of the SSA. See Pearson v. Astrue, 271 F. App'x 979, 981 (11th Cir. 2008) (per curiam) (affirming Commissioner's decision that claimant not disabled where VA assessed 100% disability rating because the ALJ "considered the rating in his decision and correctly explained that a claimant had to satisfy a more stringent standard to be found disabled under the Social Security Act.").

The ALJ also explained why Plaintiff failed to meet the more stringent standard despite the rating, and the "legitimate basis" articulated by the ALJ for not according great weight to the VA rating (the conditions are not disabling under the SSA standard) is supported by the substantial evidence she cites. In her decision, the ALJ discussed the medical evidence, including treatment notes from VA providers, and observed: "The claimant testified to mental problems as part of his disability; however, there is no medical evidence that demonstrates more than mild to moderate limitations in this case. Specifically, the claimant has never experienced any medically documented difficulties with activities of daily living, social functioning, concentration and task persistence, and adaptation to work or work-like situations." (Tr. 21). The ALJ continued:

> The claimant's most significant condition is the anxiety disorder (panic disorder with agoraphobia). Despite this diagnosis, I find that he is very functional, as he has admitted to the treating psychologist (Exhibit 10F/20). The claimant alleged that he gets anxiety attacks and does not want to leave the house; however, notes of treatment in the Department of Veterans Affairs records show that he goes

alone to the visits, and gets there on time. I noticed that he was very organized at the hearing and had compiled a folder with all the relevant medical information, and was able to clearly remember details of past work and treatment. Although he could reasonably have been anxious due to the nature of the hearing proceeding (he stated he was, and had taken Xanax prior to the hearing), he answered all the questions in a respectful, coherent and intelligent manner, not showing any cognitive impairment.

The record shows that his psychiatrist stopped the Xanax on a visit prior to the hearing, because he was using benzodiazepines and binge drinking despite warnings (Exhibit 16F/44), and now is only on Lexapro as mental health medication. The record suggests that although he had more severe symptoms in the past, these have improved. The panic episodes are not as frequent as alleged, on record, or as limiting as seen on mental status examination dated August 25, 2014 (Exhibit 16F/43). Dr. Kelly found depressed mood; however, the claimant appeared euthymic, calm with broad affect, good judgment and no problems with attention and concentration. The claimant only was forgetful at times with recent memory. The diagnoses were non-adherence to medical treatment, Benzodiazepine dependence, alcohol abuse, and panic disorder with agoraphobia.

Notes of psychological treatment dated November 17 2014, received after the hearing, reveal that the claimant was upset with the psychiatrist because he felt her treating record was inaccurate, and this is why the hearing did not go well (Exhibit 16F/5). The truth is that the whole record does not support the claimant's allegations. The claimant's daily activities of daily living do not support his allegations of disability. He used to live alone for 8-9 months and now has a girlfriend. Therefore, the claimant used to take care of himself, attend appointments, pay his bills and perform shopping on his own. He drives. Furthermore, the claimant goes out with his friends very often and drinks in bars, although he testified these were small bars and not much people. He went boogie boarding in August (Exhibit 10F/14). He enjoys house hunting (Exhibits 5F and14F). All these activities involve being out in public and diminish the claimant's credibility regarding the alleged disabling condition.

(Tr. 24-25). The records cited support the ALJ's ultimate conclusion that Plaintiff's VA

rating is not entitled to great weight. See Adams v. Comm'r of Soc. Sec., 542 F. App'x.

854, 857 (11th Cir. 2013) (no error where ALJ "expressly considered" VA rating in making his own determination that claimant was not disabled.)

    2.  The Opinion of Treating Psychiatrist Dr. Ritchie

As noted in the parties' joint statement of the relevant medical evidence, on April 17, 2013, Rand C. Ritchie, M.D., provided an up-date to Captain Siebert regarding Plaintiff's panic disorder (Tr. 345). He noted that Plaintiff had minimal improvement and experienced several side effects from trials of anti-depressant medication. Id. Dr. Ritchie said he did "*not feel that [Mr. Bailey] has ever had impairment in his ability to function*. I do feel that he will need continued cognitive behavioral therapy and I do feel that it is likely he will need further medical management in the future." Id. (emphasis added). Dr. Ritchie's treatment notes dated April 29, June 3, and July 1, 2013, show Plaintiff alleged some increased anxiety and Dr. Ritchie refilled Plaintiff's medications (Tr. 394). Those treatment notes do not include any mental status exams (Tr. 394).

On July 12, 2013, Dr. Ritchie completed a Mental Disorders Disability Benefits Questionnaire for the Department of Veterans Affairs (Tr. 346-350). He reported that Plaintiff had been diagnosed with panic disorder with agoraphobia and general anxiety disorder (Tr. 346). Dr. Ritchie opined that Mr. Bailey suffered from "[o]ccupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation" (Tr. 347). The doctor indicated that Plaintiff's symptoms included anxiety, panic attacks more than once a week, disturbance of motivation and mood, difficulty in establishing and maintaining effective work and social relationships, difficulty adapting to stressful circumstances, including work or a work-like setting, and inability to establish and maintain effective relationships (Tr. 349).

In her decision, the ALJ summarized Dr. Ritchie's evaluation from April 17, 2013 (Tr. 19), but did not discuss his opinion of July 12, 2013. Plaintiff claims this is reversible error. The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor. Winschel, 631 F.3d at 1178-79 (citing 20 CRF §§ 404.1527(a)(2), 416.927(a)(2); Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987).) When evaluating a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. See 20 C.F.R. §§ 404.1527(c), 416.927(c).

Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. See Lewis v. Callahan, 125 F.3d 1436 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). Good cause for disregarding an opinion can exist when: (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or is inconsistent with the source's own treatment notes. Lewis, 125 F.3d at 1440. By contrast, a consultative examiner's opinion is not entitled to the deference normally given a treating source. See 20 C.F.R. § 404.1527(c)(2); Crawford v. Comm'r, Soc. Sec. Admin., 363 F.3d 1155, 1161 (11th Cir. 2004) (noting a one-time examiner's opinion is not entitled to great weight). Nonetheless, all opinions,

including those of non-treating state agency or other program examiners or consultants, are to be considered and evaluated by the ALJ. <u>See</u> 20 C.F.R. §§ 404.1527, 416.927, and <u>Winschel</u>.

Here, the ALJ referenced the exhibit containing Dr. Ritchie's notes and evaluations but did not specifically evaluate the July 12, 2013 opinion. Plaintiff contends that Dr. Ritchie's finding that Plaintiff would experience "occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks" (Tr. 347) is consistent with Dr. Charbonneau's opinion that Plaintiff was unable to meet competitive standards regarding his ability to perform at a consistent pace without an unreasonable number and length of rest periods due to his panic and need to retreat (Tr. 874). Plaintiff concludes that "[t]his would certainly impact Mr. Bailey's ability to perform work eight hours a day, five days a week on a regular and continuing basis." (Doc. 17). While the ALJ erred in failing to explicitly evaluate the July 2013 opinion, the Court is not persuaded that the error requires remand.

In the form at issue, Dr. Ritchie checked a box which provides his opinion of Plaintiff's level of occupational and social impairment. While Plaintiff focuses on one phrase from that opinion, the complete sentence reads: ""[o]ccupational and social impairment with *occasional* decrease in work efficiency and *intermittent* periods of inability to perform occupational tasks, *although generally functioning satisfactorily, with normal routine behavior, self-care and conversation*" (Tr. 347) (emphasis added). Plaintiff fails to explain how this finding, fully credited, is inconsistent with the ALJ's determination of Plaintiff's residual functional capacity.[4] To the extent Plaintiff appears to suggest that

---

[4] "From the mental standpoint, he can understand, retain and carry out simple instructions and consistently and usefully perform *routine* tasks on a sustained basis with minimal supervision. He is *able to adapt overtime to most changes and tasks demands*, make simple decisions and take appropriate

the finding equates to a preclusion of an ability to perform full time work, this interpretation is not supported by Dr. Ritchie's form opinion. Dr. Ritchie did *not* find that Plaintiff had an "occupational impairment with reduced reliability and productivity;" nor did he check the box for "deficiencies in most areas" or "total occupational or social impairment." (Tr. 347).[5]  Therefore, and absent a showing that this opinion is inconsistent with the ALJ's ultimate finding, any error in failing to explicitly weigh the opinion is harmless.

    3. <u>The opinion of Dr. Charbonneau</u>

    Plaintiff's final contention is that the ALJ erred in confusing the opinion of the consultative psychologist with the opinion of a treating therapist. As set forth in the agreed facts, on December 10, 2013, Plaintiff presented to Nancy MacKay, Psy.D., for a consultative psychological evaluation at the request of the Office of Disability Determinations (Tr. 400-402, 859-861). Dr. MacKay noted that Plaintiff was oriented times three and his eye contact was good (Tr. 402, 861). Dr. MacKay's clinical findings showed Plaintiff: (1) was a good historian; (2) reported no difficulty getting along with coworkers and supervisors while serving in the military through 2013; (3) had no history of psychiatric hospitalizations; (4) denied any significant depressive symptoms; (5) had friends with whom he enjoyed spending time; (6) was capable of all of his activities of daily living; (7) enjoyed house hunting; (8) had good grooming and hygiene; (9) had clear and coherent speech and logical thought processes; (10) exhibited no evidence of any hallucination, delusions, and suicidal or homicidal ideation; and (11) could manage his

---

precautions from normal hazards. He cannot work with the public, but is able to work occasionally with coworkers and supervisors." (Tr. 18 - emphasis added).

    [5]  To the extent Plaintiff argues that this opinion is consistent with the opinion of another provider, the ALJ considered - and rejected- that other opinion (Tr. 24). Dr. Ritchie's opinion is thus cumulative.

own financial affairs (Tr. 401-02). Her diagnostic impression was panic disorder with agoraphobic features, adjustment disorder with mixed emotional features, and a history of alcohol use disorder. Id.

On February 26, 2014, Mr. Bailey presented to Mary A. Charbonneau, Ph.D., at the VA for an initial therapy appointment (Tr. 737-739). Dr. Charbonneau noted that Plaintiff was talkative from anxiety and his mood and affect were very anxious (Tr. 738). Her diagnoses included panic disorder with agoraphobia, thyroid issues, irritable bowel syndrome, and hypertension (Tr. 739).

On March 10, 2014, Dr. Charbonneau completed a Mental Medical Source Statement for Plaintiff (Tr. 873-875). She had seen him twice for fifty minute therapy sessions and noted a variety of mental health symptoms he experienced (Tr. 873). Dr. Charbonneau opined that Plaintiff was unable to meet competitive standards regarding his ability to perform at a consistent pace without an unreasonable number and length of rest periods due to his panic and need to retreat (Tr. 874). She opined that Plaintiff was seriously limited, but not precluded in his ability to maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; respond appropriately to changes in a routine work setting; and to deal with the stress of semiskilled and skilled work. Id. Dr. Charbonneau opined that Plaintiff's impairments or treatment would cause him to be absent from work more than four days per month (Tr. 875). She further opined that Plaintiff's impairments were reasonably consistent with the symptoms and functional limitations described in her evaluation. Id. When asked to describe the clinical findings, including mental status test results, that demonstrate the

severity of Plaintiff's mental impairments and symptoms, Dr. Charbonneau stated that she

had not conducted any such tests (Tr. 873). In her decision, the ALJ stated:

> Dr. MacKay submitted a medical source statement of the
> claimant's mental condition (Exhibit 14F). She reported that
> had only seen the claimant on two visits. Despite the above
> reported findings in her examination of the claimant, she
> opined that because of panic, he would be seriously limited in
> maintaining a regular schedule, complete a normal workday or
> workweek , respond appropriately changes in a routine work
> setting and deal with the stress of semiskilled and skilled
> work. She also opined that the claimant would not be able to
> perform at a consistent pace without an unreasonable number
> of rest periods, and that he would be absent from work more
> than four days per month. I give little weight to Dr. MacKay's
> opinions. She had only seen the claimant two times.
> Furthermore, her own notes, the claimant's own reported daily
> activities and the substantial record evidence contradicts her
> assessment.

(Tr. 24).

Plaintiff contends that the case must be remanded because "[t]he ALJ erroneously

believed that Dr. MacKay completed the medical source statement rather than Dr.

Charbonneau." (Doc. 17 at 23). Plaintiff fails, however, to identify why the

misidentification was prejudicial. The ALJ did not ignore the substance of the opinion and

noted, correctly, that the provider issuing the opinion had only seen the claimant twice.

The ALJ dealt directly with the merits of the opinion and provided a rationale for

discounting it (inconsistency with treatment notes, daily activities reported, and record

evidence summarized in her decision), all of which is supported by the substantial

evidence she cites. Remand for the sole purpose of correcting the author's name is

unwarranted. See Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ error

harmless where correcting the error would not change the ALJ's decision).

## V. Conclusion

The administrative decision was made in accordance with proper standards and is supported by substantial evidence. For the reasons set forth above, the administrative decision is **AFFIRMED**. The Clerk is directed to enter judgment accordingly, terminate all pending matters, and close the file.

**Done and Ordered** in Orlando, Florida on October 20, 2016.

THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to Counsel of Record